```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
                                    :
FREDDY SANCHEZ,                     :  07 Civ. 6293 (LTS)(JCF)
                                    :
              Plaintiff,            :      REPORT AND
                                    :      RECOMMENDATION
    - against -                     :
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,    :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - - :
TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:
```

Freddy Sanchez brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final determination of the Commissioner of Social Security (the "Commissioner") denying him a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i) and 423(d). The plaintiff alleges that he is disabled due to lower back and leg pain.

The parties have both submitted cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The plaintiff contends that the decision of the Administrative Law Judge (the "ALJ"), on which the Commissioner's final determination is based, is not supported by substantial evidence. Specifically, Mr. Sanchez alleges that: (1) the ALJ's determination of his Residual Functional Capacity ("RFC") was unsupported by medical evidence; (2) the ALJ did not give enough credit to the plaintiff's testimony regarding the degree of pain that he suffered; (3) when making the RFC assessment, the ALJ did not adequately consider how frequently the plaintiff needed to

1

alternate between sitting and standing; and (4) the ALJ did not properly evaluate the vocational expert's testimony when determining the RFC. For the reasons that follow, the plaintiff's motion is denied and the Commissioner's cross-motion is granted.

Procedural History

Freddy Sanchez applied for a period of disability and disability insurance benefits on October 12, 2005, alleging that his disability began on September 20, 2004 due to degenerative disc disease. (Tr. at 59-63).[1] His application was initially denied on February 24, 2006. (Tr. at 30-33). The plaintiff appealed, and a hearing was held before an ALJ on January 5, 2007. (Tr. at 231-69). In a decision dated January 25, 2007, the ALJ found that the plaintiff was not disabled. (Tr. at 19-25). The ALJ's decision became the Commissioner's final determination when the Appeals Council denied the plaintiff's request for review on May 25, 2007. (Tr. at 3-5).

Background

    A. The Plaintiff's Testimony

Mr. Sanchez was born on July 16, 1958. (Tr. at 59). He has a high school education and has worked as a handyman and porter. (Tr. at 79-80, 239-43). He injured his back at work on December 8, 2003 (Tr. at 244), but continued to work until September 20, 2004, when the pain from the injury became too severe for him to continue. (Tr. at 78-79, 244-45). At his hearing, Mr. Sanchez

---

[1] "Tr." refers to the transcript of the administrative record filed by the Commissioner as part of his answer.

2

estimated that he could sit comfortably for approximately half an hour before needing to stand and walk for a period of five to ten minutes. (Tr. at 250). Mr. Sanchez said he could walk continuously for approximately half an hour and could carry up to fifteen pounds. (Tr. at 250-51). The plaintiff also stated that he needed to lie down for at least an hour every day to relieve his back pain. (Tr. at 256). Further, he testified that his leg was constantly numb and that he occasionally used a cane. (Tr. at 246-47). At the time of the hearing, Mr. Sanchez was not taking medication for his pain because it made him dizzy. (Tr. at 249).

B. Treatment History and Diagnoses

Mr. Sanchez first sought treatment from Dr. John Sayegh, a chiropractor, on December 22, 2003. (Tr. at 215). A magnetic resonance imaging ("MRI") test conducted at Dr. Sayegh's request on March 8, 2004 revealed evidence of a herniated disc at L4-5 (between the fourth and fifth vertebrae of the lumbar spine) with impingement on the nerve root. (Tr. at 112, 184).

Dr. Sayegh referred Mr. Sanchez to Dr. Paul Schmidt, a consulting neurologist, who evaluated the plaintiff on April 28 and May 4, 2004. (Tr. at 180, 187). Dr. Schmidt diagnosed left lumbar radiculopathy and left lumbar myofascial pain. (Tr. at 186-87). Dr. Schmidt also conducted electromyography ("EMG") studies on May 4, 2004, which revealed evidence of left lower lumbar radiculopathy. (Tr. at 180-83).[2]

---

[2] As a result of Dr. Schmidt's report, Dr. Sayegh suggested that Mr. Sanchez add physical therapy to his rehabilitation regimen in addition to chiropractic care. (Tr. at 185). He also suggested

3

Dr. Sujata Vidyasagar, a neurologist at S.V. Medical, P.C. ("S.V. Medical"), examined Mr. Sanchez in June 2004, September 2004, and May 2005, in connection with physical therapy treatment the plaintiff was undergoing under his supervision. (Tr. at 138, 156-73, 175-77). In June 2004, Dr. Vidyasagar noted that the plaintiff had shooting pain and numbness in his lower left leg and that surgery had been recommended. (Tr. at 171). The plaintiff had twenty-one physical therapy sessions at S.V. Medical between June 28, 2004, and September 1, 2004. (Tr. at 162-65). After conducting a series of tests on September 1, 2004, Dr. Vidyasagar noted that Mr. Sanchez had limited range of motion in his left hip and lumbar spine and recommended that physical therapy continue. (Tr. at 171-73, 175-77).

On October 22, 2004, Dr. Arthur Williams, a neurosurgeon, performed a lumbar laminectomy and medial facetectomy at St. Luke's-Roosevelt Hospital. (Tr. at 119-20). After a recovery period, Mr. Sanchez underwent another series of physical therapy sessions between March 2005 and June 2005 at S.V. Medical. (Tr. at 156-62).

Mr. Sanchez was seen by another chiropractor, Robert T. McVeigh, on March 16, 2005. (Tr. at 132-36). After examining the plaintiff, Dr. McVeigh diagnosed lumbosacral sprain, left lumbosacral radiculopathy, and status-post lumbar laminectomy and discectomy at L4-5. (Tr. at 134).

Dr. Paul Carton, an orthopedic surgeon, conducted an

---

that the plaintiff consult a neurosurgeon. (Tr. at 185).

4

independent examination on March 22, 2005 in connection with the plaintiff's application for Workers' Compensation. (Tr. at 127-30). Dr. Carton diagnosed status-post lumbar laminectomy and discectomy for disc herniation but found that the plaintiff's subjective complaints of chronic low back pain were not supported by objective findings. (Tr. at 129).

After a period of recovery from the surgery, Mr. Sanchez underwent another series of physical therapy sessions between March 2005 and June 2005 at S.V. Medical. (Tr. at 156-62). Dr. Vidyasagar reexamined Mr. Sanchez in May 2005, and found that he had full range of motion in his lumbar spine, positive straight leg raising on his left side, and no impairment of muscle strength in his lower extremities. (Tr. at 138). Dr. Vidyasagar reported an impairment of light touch along the medial aspect of Mr. Sanchez's left thigh, left leg, and the medial section of his left foot. (Tr. at 138).

Mr. Sanchez visited Dr. Dennis Pazos, a chiropractor, in September 2005, December 2005, June 2006, and November 2006. (Tr. at 196-203, 208-12). In his September 2005 report, Dr. Pazos concurred with Dr. Carton's diagnosis and also found lumbar myofascial pain syndrome. (Tr. at 208-12). His later reports reflect the same diagnoses. (Tr. at 196-203).

Mr. Sanchez resumed his chiropractic treatments with Dr. Sayegh around December 2005. He received treatments two or three times per week until the date of the ALJ's decision. (Tr. at 191-95, 213-15).

The plaintiff underwent another consultive orthopedic examination with Dr. Matthew Illikal on January 26, 2006 at the request of the Social Security Administration. (Tr. at 140-44). Dr. Illikal reported that the plaintiff walked with a cane but had a normal gait and station and was in no acute distress. (Tr. at 141). Dr. Illikal found that Mr. Sanchez had full muscular strength, no sensory abnormalities, and decreased range of motion in his spine but with no spasm or trigger points. (Tr. at 142).

C. Residual Functional Capacity Assessments

1. Medical Experts

Following his March 22, 2005 examination, Dr. Carton, the orthopedist, determined that Mr. Sanchez was able to perform light work that did not require lifting more than twenty-five pounds and would allow Mr. Sanchez to change positions from standing to sitting at will. However, Mr. Sanchez could not engage in repetitive bending, squatting, kneeling, crawling, or climbing. (Tr. at 129).[3]

In a June 14, 2005 report following the surgery he performed on the plaintiff, Dr. Williams noted improvement in the plaintiff's condition. (Tr. at 139). He restricted Mr. Sanchez from performing his previous job as a handyman and porter and from performing similar jobs, but he mentioned no further work limitations. (Tr. at 139).

---

[3] The plaintiff suggests that Dr. Carton's opinion is entitled to little weight because he did not review Dr. Williams' report regarding the plaintiff's surgery. However, Dr. Carton reviewed the MRI scan and EMG studies and conducted his own examinations. (Tr. at 127-30).

6

In his January 26, 2006 report following an orthopedic consultation, Dr. Illikal concluded that the plaintiff could carry up to thirty pounds, was unable to sit more than two hours, and had moderate limitations in his ability to walk, stand, lift, and carry heavy objects. (Tr. at 140-43).

### 2. Chiropractors

After examining Mr. Sanchez on March 16, 2005, Dr. McVeigh found that the plaintiff was able to perform work that did not involve lifting more than ten to fifteen pounds or require excessive bending, climbing, or kneeling. (Tr. at 135). Dr. McVeigh also concluded that the plaintiff needed to alternate between sitting and standing. (Tr. at 135).

Dr. Pazos, who saw Mr. Sanchez on several occasions between September 2005 and June 2006, concluded that the plaintiff could perform light duty work that did not require lifting more than twenty-five pounds or excessive bending. (Tr. at 198, 202).

Dr. Sayegh was the medical service provider who had the most contact with Mr. Sanchez over the longest period of time. His assessment of Mr. Sanchez's residual functional capacity was more conservative than that of the other medical service providers. Dr. Sayegh opined that Mr. Sanchez was able to stand, walk, or sit for only half an hour before needing to change position. (Tr. at 220). He also stated that the plaintiff was unable to work an eight-hour work day. (Tr. at 217-23).

### 3. The Vocational Expert's Testimony

Pat Green, a vocational expert, testified at the

administrative hearing. (Tr. 261-68). She indicated that Mr. Sanchez's past work was classified under two <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") codes. (Tr. at 262). His first job was as a cleaner, <u>DOT</u> code 381.687-014, and was classified as unskilled, heavy work.[4] (Tr. at 262). Subsequently, he had worked as a janitor, <u>DOT</u> code 382.664-010, which was semi-skilled, medium work.[5] (Tr. at 262). After reviewing all relevant medical evidence and listening to the plaintiff's testimony, the ALJ asked Ms. Green whether an individual of Mr. Sanchez's age, education, and work experience could perform work in the national or local economies if he also needed to alternate sitting and standing positions at will and could only occasionally change posture. (Tr. at 263-65). Ms. Green testified that given these factors, Mr. Sanchez could perform such sedentary jobs[6] as pari-mutuel ticket checker, nut sorter, and hand bander. (Tr. at 264-65). She stated that there were many positions within each job category in both the

---

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [it is deemed] that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567 (d).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [it is deemed] that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567 (c).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

8

regional and national economies. (Tr. at 264-65). Plaintiff's counsel asked whether someone could perform any of these jobs if he needed to walk away from the work station for two to three minutes every fifteen minutes. Ms. Green replied that, given this added stipulation, the person would not qualify for any of the jobs. (Tr. at 268).

Analytical Framework

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The decision of the ALJ must be affirmed if it is based on substantial evidence and is not the result of legal error. 42 U.S.C. § 405(g); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); Rodriguez v. Barnhart, No. 05 Civ. 3383, 2006 WL 988201, at *3 (S.D.N.Y. April 13, 2006). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DeJesus v. Barnhart, No. 04 Civ. 6687, 2007 WL 959256, at *2 (S.D.N.Y. March 30, 2007) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the Commissioner based his conclusion on substantial evidence, this Court must defer to that finding, even if the plaintiff's position is also supported by substantial evidence. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

A claimant who meets the insured status requirements of 42 U.S.C. § 423(c) and is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

9

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is entitled to disability benefits under the Social Security Act. 42 U.S.C. § 423(d)(1)(A); <u>Wagner v. Secretary of Heath & Human Services</u>, 906 F.2d 856, 860 (2d Cir. 1990); <u>Castillo v. Apfel</u>, No. 98 Civ. 0792, 1999 WL 147748, at *5 (S.D.N.Y. March 18, 1999). When assessing whether a claimant is disabled, the Commissioner follows a five-step process. First, he must determine whether the claimant is currently engaged in gainful activity. If not, the Commissioner must proceed to the second step and decide whether the claimant has an impairment severe enough to constitute a limitation of basic work activities. Third, if the impairment is significant enough to equal the disabilities listed in the regulations, the claimant is automatically found eligible for benefits. Otherwise, the Commissioner must proceed to the fourth step and determine whether the claimant's residual functional capacity would permit him to return to his former employment. Finally, if the claimant is incapable of returning to his prior work, the Commissioner must decide if there is any other work available in the economy that the claimant is able to perform. 20 C.F.R. § 404.1520; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984); <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983); <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982); <u>Castillo</u>, 1999 WL 147748, at *5.

The claimant bears the burden of proof with respect to the first four steps of the analysis. <u>Dumas v. Schweitzer</u>, 712 F.2d

1545, 1550 (2d Cir. 1983). Once the claimant demonstrates an inability to return to his prior employment, the burden shifts to the Commissioner to show that there is other work that the claimant could perform. Id.; Berry, 675 F.2d at 467.

Discussion

### A. The ALJ's Determination

In evaluating the plaintiff's claim, the ALJ found that Mr. Sanchez met the insured status requirements of the Social Security Act through December 31, 2009, and that he had not been gainfully employed since September 20, 2004. (Tr. at 21). The ALJ next concluded that the plaintiff did not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, the plaintiff was not entitled to an automatic finding of disability. (Tr. at 21). Upon reviewing the medical evidence, however, the ALJ found that the plaintiff was unable to return to his prior employment. (Tr. at 21). Nevertheless, as noted above, the vocational rehabilitation expert testified that there were numerous sedentary jobs in the economy that Mr. Sanchez could perform given his age, education, work experience, and physical limitations. Accordingly, the ALJ concluded that he was not disabled pursuant to 20 C.F.R. § 404.1520(g). (Tr. at 25).

### B. Treating Physician Rule

The plaintiff argues that Dr. Sayegh's Functional Capacity Assessment, which stated that Mr. Sanchez should not work an eight hour day, should have been given controlling weight. Since the ALJ

did not accord it such weight, the plaintiff argues that his determination was incorrect and based on insufficient medical evidence.

The "treating physician rule," codified in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), provides that the medical opinion of the physician engaged in the primary treatment of a claimant is given "controlling weight" if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. Accord Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Further, the ALJ must consider several factors when evaluating the opinion of each medical examiner, including: (1) the length of the treatment relationship between the examiner and the plaintiff; (2) the extensiveness of the examinations; (3) the extent to which the examiner's conclusions are supported by the record; (4) the consistency of the opinion with the overall record; and (5) the specialization of the examiner. 20 C.F.R. § 404.1527(d). These factors apply to an analysis of the opinions of chiropractors as well as to other "acceptable medical sources" such as traditional doctors. Social Security Regulation ("SSR") 06-03p, 71 Fed. Reg. 45,593-97 (Aug. 9, 2006).

The plaintiff argues that since Dr. Sayegh had the most extensive and frequent contact with Mr. Sanchez compared to the other examiners, his report is the most reliable and should be given controlling weight. However, his opinion is inconsistent with the conclusions of other medical examiners (Tr. at 21-23), and

12

therefore was properly discounted.

Only Dr. Sayegh believed that Mr. Sanchez was incapable of working an eight-hour workday. As previously noted, Dr. Carton and Dr. Pazos both found that Mr. Sanchez could return to light duty work provided that he could alternate between sitting and standing. (Tr. at 129, 198). Dr. McVeigh concluded that the plaintiff could return to work, but not as a handyman. (Tr. at 135). Finally, although he did not state explicitly what work the plaintiff was capable of performing, Dr. Williams found only that the plaintiff was incapable of returning to his old job or "any related job which requires similar demands on his back." (Tr. at 139). Thus, Dr. Sayegh's opinion was not entitled to controlling weight.

    C. <u>Credibility of the Plaintiff's Testimony</u>

The plaintiff next argues that the ALJ did not adequately value the plaintiff's testimony regarding the extent of his pain. In assessing a claimant's testimony regarding severity of symptoms, subjective testimony alone cannot be the basis for a finding of disability. Instead, the claimant must demonstrate through objective medical evidence that an underlying condition exists that can reasonably be expected to produce the alleged symptoms. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ must determine whether the reported symptoms are consistent with objective medical proof and all other evidence. 20 C.F.R. § 404.1529(a). Here, the record demonstrates that Mr. Sanchez could perform sedentary work as defined under 20 C.F.R. § 404.1567(a). However, the plaintiff testified that he was incapable of

13

performing such jobs and had greater physical limitations than the medical evidence suggested. (Tr. at 243-61). Where a plaintiff's testimony contradicts objective medical evidence, the Commissioner considers other factors when evaluating a claimant's credibility, including (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, and intensity of his pain or other symptoms; (3) factors precipitating or aggravating the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) any other treatment; and (6) any other measures utilized to relieve the pain or other symptom. 20 C.F.R. § 404.1529(c)(3).

Several key facts led the ALJ to conclude that the plaintiff's testimony was not credible. First, Mr. Sanchez did not take any medication, which was inconsistent with his allegations of pain. (Tr. at 23). Second, the plaintiff indicated in his own testimony that he could perform light household duties and could carry up to fifteen pounds. (Tr. at 251-53). Lastly, the ALJ observed the plaintiff sit comfortably for the duration of the thirty-nine minute hearing. (Tr. at 23). The plaintiff asserts that it was improper for the ALJ to base his decision in part on his own observations during the proceeding. However, an ALJ can base his final decision at least in part on his own observations of the claimant. 20 C.F.R. § 416.929(c)(3); Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Taking all evidence into account, it was not unreasonable for the ALJ to conclude that the plaintiff's allegations regarding the severity of his symptoms were not

14

credible.

   D.   Specificity of the ALJ's Ruling

   The plaintiff next argues that the ALJ was not sufficiently specific in his ruling, and that this was a violation of SSR 96-6p and 96-9p. However, the ALJ's determination was not inconsistent with these regulations.

   First, the plaintiff alleges that the ALJ violated SSR 96-6p because he did not specify the range of work the plaintiff could perform. However, SSR 96-6p requires the ALJ to "evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant" and outlines the circumstances under which an ALJ must obtain a medical expert's updated opinion. SSR 96-6p, 61 Fed. Reg. 34,468 (July 2, 1996). There is no language in the rule that suggests that an ALJ must specify the range of work a claimant can perform.

   SSR 96-9p is more on point; it requires the ALJ to state "the frequency of the [claimant's] need to alternate sitting and standing." SSR 96-9p, 61 Fed. Reg. 34,482 (July 2, 1996). After determining that the plaintiff needed to alternate between sitting and standing, the ALJ ruled that Mr. Sanchez could perform "a range of sedentary work with no more than occasional postural positions and the opportunity to alternate sit/stand positions at will," (Tr. at 21). This description was sufficiently specific to satisfy the requirements of SSR 96-9p. See McCafferty v. Asture, No. 07-3641, 2008 WL 1869282, at *4 (E.D. Pa. April 25, 2008) (holding that description of claimant as needing to alternate between sitting and

standing positions at will fulfilled requirement of SSR 96-9p that ALJ specify "frequency" at which plaintiff needed to alternate sitting and standing positions). Therefore, the plaintiff's argument fails.

 E. <u>Available Work</u>

  1. <u>The Hypothetical</u>

The plaintiff next argues that the ALJ did not correctly evaluate the testimony of the vocational rehabilitation expert when determining the RFC. As noted above, Ms. Green stated that Mr. Sanchez could not perform any of the sedentary jobs she had listed if, in addition to alternating sitting and standing positions, he also needed to walk around for two to three minutes every fifteen minutes. The plaintiff argues that this demonstrates he could not perform any job listed by Ms. Green, and that the ALJ's determination should therefore be overturned. However, the medical evidence did not establish that Mr. Sanchez needed to walk, only that he had to alternate between sitting and standing. Further, the plaintiff sat comfortably for the entire thirty-nine minute hearing, which demonstrated that he did not need to stand and walk every fifteen minutes. Accordingly, the ALJ did not take the added stipulation into account when determining the RFC.

  2. <u>Additional Jobs</u>

The plaintiff further asserts that the ALJ's conclusion that Mr. Sanchez was capable of working was unsupported by Ms. Green's testimony. In addition to the three sedentary jobs that Ms. Green said Mr. Sanchez could perform, she also stated that he could be an

16

assembler of small products, ticket seller, and garment sorter. (Tr. at 263). During cross-examination, the plaintiff's counsel noted that under SSR 83-12p, jobs with a production pace were not amenable to a claimant alternating between sitting and standing. (Tr. at 267). Since these non-sedentary jobs had a production pace, plaintiff's counsel claimed that they could not be performed by Mr. Sanchez because he needed to alternate between sitting and standing. (Tr. at 267). In consideration of this comment, Ms. Green then implied that the plaintiff could not perform the non-sedentary jobs. (Tr. at 267). The plaintiff argues that the ALJ erroneously overlooked this exchange when assessing his RFC. However, the ALJ ruled that the plaintiff was capable of performing a range of sedentary work (Tr. at 21), while assembler of small products, ticket seller and garment sorter, are all classified as light work.[7] (Tr. at 263). Therefore, these three jobs were not among those that the ALJ concluded Mr. Sanchez could perform, and the plaintiff's argument is therefore moot.

Conclusion

For the reasons set forth above, the Commissioner's decision

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, [it is deemed] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567 (b).

was supported by substantial evidence. Accordingly, I recommend that the plaintiff's motion be denied, the Commissioner's cross-motion be granted, and judgment be granted in favor of the Commissioner.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura T. Swain, Room 755, and to the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         September 17, 2008

Copies mailed this date to:

Lewis B. Insler, Esq.
Insler & Hermann, LLP
80 Grasslands Road - Suite 102
Elmsford, New York 10523

Susan D. Baird, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007